IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ADEMOLA ILORI, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-1219 |
| CARNEGIE MELLON UNIVERSITY and LEONARD BRUSH, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

### *Background*

Pending before this court is a motion for reconsideration of the partial granting of a motion for summary judgment in favor of defendant Carnegie Mellon University ("CMU"). Ademola Ilori ("plaintiff"), an African-American software engineer, commenced this race-based discrimination and retaliation action against his former employer, CMU, and former supervisor, Leonard Brush ("Brush," together with CMU, collectively "defendants"). On December 15, 2009, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 21.)

On September 23, 2010, the court issued a memorandum opinion ("Mem. Op." (ECF No. 45)) and order (ECF No. 46) granting in part and denying in part the motion for summary judgment. On October 12, 2010, plaintiff filed a motion for reconsideration (ECF No. 47). The motion for reconsideration relates to the memorandum opinion and order dated September 23, 2010. For the reasons that follow, the motion will be denied.

1

*Legal Standard*

A motion to reconsider "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice." Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310, 313-14 (M.D. Pa. 1994), aff'd, 31 F.3d 1175 (3d Cir. 1994). By reason of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. Rottmund v. Continental Assurance Co., 813 F. Supp. 1104, 1107 (E.D. Pa. 1992). Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it, rightly or wrongly, has already made. Williams v. Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). With regard to the third ground, litigants are cautioned to "'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" Id. at 314 n.3 (citing Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

*Discussion*

Plaintiff argues the court erred by granting summary judgment in CMU's favor with respect to his retaliation and race-based discrimination claims implicating a failure to promote under the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 595, 959 *et seq.* ("PHRA") and 42 U.S.C. § 1981 ("§ 1981") because (1) the court improperly considered whether plaintiff's claims were barred by applicable statutes of limitations; and (2) genuine issues of material fact exist for a jury to determine whether CMU denied plaintiff the Qatar position based upon his

race or in retaliation for engaging in protected activity.[1] Defendants respond that, assuming plaintiff's claims implicating a failure to promote were timely, no reasonable fact-finder could conclude CMU withdrew the Qatar position by reason of plaintiff's race or for engaging in protected activity. Because plaintiff does not point to an intervening change in controlling law or the availability of new evidence not previously available, the court will construe the motion for reconsideration as a request to correct a clear error of law or prevent manifest injustice.

I. *Timeliness of plaintiff's claims implicating a failure to promote*

    a. PHRA claim

Plaintiff asserts defendants did not raise an affirmative defense regarding the statute of limitations in their motion for summary judgment with respect to plaintiff's PHRA claims implicating a failure to promote and the court therefore improperly raised and decided the issue *sua sponte*. In their response, defendants do not address this issue; rather, defendants argue that regardless whether those claims were timely, they should not survive summary judgment because there are no genuine issues of material fact.

Defendants raised the statute of limitations defense in their briefing with respect to plaintiff's § 1981 claims. (Mem. Op. at 19.) At a minimum, the court and parties were on notice that some or all of plaintiff's claims could be considered time-barred. Indeed, the court reviewed the PHRA's requirements for administrative exhaustion and determined that plaintiff failed to meet those requirements with respect to his PHRA claim implicating a failure to promote. (See Mem. Op. at 33-34.) Whether the court conducted this analysis *sua sponte* is moot because district courts are permitted to review claims that are facially deficient with respect to

---

[1] For purposes of the instant motion for reconsideration, the court assumes familiarity with its prior memorandum opinion dated September 23, 2010. Ilori v. Carnegie Mellon Univ., No. 08-1219, 2010 WL 3811717 (W.D. Pa. Sept. 23, 2010) (ECF No. 45). The operative facts will be discussed in this opinion only to the extent that they are directly relevant to the issues raised in support of (or in opposition to) the motion for reconsideration.

administrative exhaustion.  See Pena-Ruiz v. Solorzano, 281 F. App'x 110, 112 n.3 (3d Cir. 2008) ("[A] district court has the inherent power to dismiss sua sponte a [claim] . . . which facially violates a bar to suit."); Garland v. US Airways Inc., 270 F. App'x 99, 103 (3d Cir. 2008) (plaintiff did not demonstrate that he exhausted his administrative remedies with the EEOC, and the discrimination claims were properly dismissed); see also McPherson v. United States, No 08-3757, 2010 WL 3446879, at *4 n.4 (3d Cir. Sept. 2, 2010) ("[D]istrict court judges within the Third Circuit have long held that a court may *sua sponte* dismiss complaints on statute of limitations grounds.").

Plaintiff asserts he timely filed a PHRC complaint related to CMU's failure to promote him to the Qatar position on October 12, 2004.  (See Pl.'s Mot. for Recons. (ECF No. 47) ¶ 8; Pl.'s App., Tab 11, Ex. 11.23.)  While plaintiff's signature on this PHRC complaint is dated October 14, 2004 (less than 180-days after the Qatar position was withdrawn), the certificate of service, pl.'s App., Tab 11, Ex. 11.25, is dated August 23, 2005.  Viewing the filing discrepancy in a light most favorable to plaintiff and construing all reasonable inferences in his favor, the court will consider the PHRC complaint to have been timely filed and will determine whether there are any genuine issues of material fact with respect to the PHRC retaliation and race-based discrimination claims implicating a failure to promote.

      b.  Section 1981 claim

Plaintiff asserts the court improperly granted summary judgment with respect to his race-based discrimination claim implicating a failure to promote under § 1981.  Plaintiff argues he discovered the Qatar position was withdrawn on September 3, 2004, making his § 1981 claim timely filed with this court inside the four-year statute of limitations under 28 U.S.C. § 1658. (Pl.'s Mot. for Recons. ¶¶ 23-24; see generally Mem. Op. at 23, 25-26.)  Plaintiff contends that,

4

under the federal discovery rule, it was impossible for him to know the position was withdrawn on August 27, 2004, because he was not privy to CMU management's email communications on August 27, 2004 which referred to the management decision to remove the position from the CMU website.

The Court of Appeals for the Third Circuit has recognized that in a federal question case, absent any contrary directive from Congress, courts should "employ the federal 'discovery rule' to determine when the federal claim accrues for limitations purposes." Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005). The federal discovery rule provides that a claim will accrue "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Id.; see Wallace v. Kato, 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.").

Plaintiff asserts he used reasonable diligence to determine whether he was still being considered for the Qatar position when he spoke with Ed Hey on September 3, 2004 and learned the position was withdrawn. The Qatar position, however, was withdrawn from the CMU website on August 27, 2004, and plaintiff does not indicate that he was denied access to that website or that the status of job postings on the website was unavailable to him. It is a close call to infer that someone exercising due diligence would check more frequently than seven days the status of a job posting on their employer's website to which they had applied. Whether plaintiff should have discovered before September 3, 2004 that the Qatar position was withdrawn via the CMU website job posting is a matter which may require a determination by a jury.

Assuming *arguendo* that plaintiff's claim was timely filed, plaintiff's motion for reconsideration fails because there is no genuine issue of material fact with respect to that claim.

II.   *Failure to promote*

5

Plaintiff asserts he was denied a promotion to a position in CMU's risk management department at its Qatar campus in violation of the PHRA and § 1981.[2] Defendants argue plaintiff's claims implicating a failure to promote fail as a matter of law because CMU never filled the position, as it was withdrawn on August 27, 2004.

    a. Burden-shifting framework

Race-based discrimination and retaliation claims implicating a failure to promote under § 1981 follow the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Wiliams v. Rohm & Haas Co., 90 F. App'x 627, 628 (3d Cir. 2004); Young v. Pennsauken Twp. Sch. Dist., 47 F. App'x 160, 161-62 (3d Cir. 2002); see also Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989). The Jalil court outlined the burden-shifting framework as follows:

> Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to rebut the proof of discrimination by articulating some legitimate, nondiscriminatory reason for the employee's discharge. The ultimate burden of persuasion, which remains always with the plaintiff, may then be met by proving by a preponderance of the evidence that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff.

Jalil, 873 F.2d at 706 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

        i. Prima facie case for race-based discrimination claim implicating a failure to promote

---

[2] Plaintiff's claims under the PHRA and § 1981 will be analyzed similarly, as the elements of these claims are generally identical. Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009); Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); see Whitmire v. Kvaerner Phila. Shipyard, 340 F. App'x 94, 98 n.1 (3d Cir. 2009).

To state a prima facie case in a race-based discrimination claim implicating a failure to promote, a plaintiff must show: (1) he was a member of a protected class, (2) he applied and was qualified for the job for which the employer was seeking applicants, (3) despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants with the employee's same qualifications. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Defendants only dispute the fourth element of plaintiff's prima facie case.

In March 2004, plaintiff applied for the risk management specialist position in Qatar. Defendants assert plaintiff does not satisfy the fourth prong because the position did not remain open; rather, it was withdrawn by CMU on August 27, 2004 and was never filled. The fourth prong is unsatisfied when the position does not remain open and is never filled. See Tsakonas v. Nextel Commc'ns, Inc., No. 04-1363, 2006 WL 2527998, at *6 (D.N.J. Aug. 31, 2006) (the position was never filled and the plaintiff could not establish his prima facie case because he failed to satisfy the fourth prong); see generally Holmes v. Bevilacqua, 774 F. 2d 636, 639 (4th Cir. 1985) ("[C]ourts which have considered cases of alleged discrimination in promotion under the McDonnell Douglas formulation have treated the requirement that the 'position remained open' after plaintiff's rejection as satisfied by proof that *the position was not abolished . . . .*" (emphasis added)).

Defendants argue the Qatar position was never filled because Chuck Thorpe, dean of the Qatar campus, and Mohamed Dobashi, associate dean of the Qatar campus, suggested the job responsibilities of the risk management position could be satisfied by drawing on the expertise of various employees at the Pittsburgh campus. From the time the position was originally posted to the time it was withdrawn, there was an ongoing discussion among the Qatar management team

7

to define what CMU wanted in the position. The qualifications for the risk management position included environmental health, safety, and risk experience. In October 2004, James Gartner ("Gartner") was appointed senior director of global security. The position was based in Pittsburgh with the primary responsibility of security at CMU's Qatar campus. Gartner's duties as senior director of global security involved security issues not limited to the Qatar campus, including: (1) managing and supporting external consultants engaged to provide security consulting and counsel to the *university*; (2) actively monitoring *global* threat assessments and providing updated reports and recommendations to management; and (3) indirect dealings on a consultative basis with other CMU locations in Greece, Portugal, Japan, and Singapore. (Defs.' Brief in Opp'n (ECF No. 48) at 4; Defs.' Supplemental App. (ECF No. 43), Tab 8 (Gartner Dep.) at 12.)

Plaintiff does not dispute Gartner had additional job responsibilities as senior director of global security. No reasonable jury could find that the Qatar position and Gartner's position were the same and therefore the position did not remain open as a matter of law. Under those circumstances, plaintiff cannot establish a prima facie case and judgment must be entered in favor of CMU. In light of that conclusion, the court need not conduct an analysis of the remainder of the burden-shifting framework. Nonetheless, the court will consider for the sake of argument that plaintiff could satisfy the prima facie case.

    ii. Legitimate nondiscriminatory reason

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. An employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a reason

that was not discriminatory for the adverse employment decision. Fuentes, 32 F.3d at 763; see generally St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993). It is not necessary for the defendant to persuade the court that it was actually motivated by the reason which it offers. Burdine, 450 U.S. at 254; Bd. of Trs. of Keene State Coll. v. Sweeney, 439 U.S. 24, 25 (1978).

Recognizing that the burden on defendant is light, and defendant can satisfy this burden "by articulating a legitimate reason for the unfavorable employment decision," Fuentes, 32 F.3d at 763, the court concludes that defendant satisfied its burden to set forth a legitimate, nondiscriminatory reason for not promoting plaintiff to the risk management specialist position because it adduced evidence that it withdrew the position and used its existing resources to meet its business needs. See generally Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000) ("[C]ourts must be careful not to second-guess an employer's business judgment that it makes in good faith . . . .").

### iii. Pretext

Once the employer has stated a legitimate, nondiscriminatory reason for the adverse employment action, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was pretextual." Fuentes, 32 F.3d at 763. In order to survive summary judgment, the plaintiff must satisfy at least one of the two prongs articulated by the United States Court of Appeals for the Third Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which the fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

### 1. Prong one

A plaintiff must submit evidence that could cause a reasonable factfinder to discredit the employer's articulated reason for the adverse employment action in order to overcome summary judgment and bring his case to trial. To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995), or produce additional evidence beyond his prima facie case. Fuentes, 32 F.3d at 764. A plaintiff must, however, demonstrate such

> weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. [Fuentes, 32 F.3d] at 764-65 (quoting Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

Simpson v. Kay Jewelers Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998).

The question asked in prong one of the Fuentes test is not whether the employer made the best, or even a sound, business decision; it is whether the real reason for the adverse result suffered by the plaintiff is discrimination. Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997). The court is neither permitted to become involved in the subjective business decisions of the employer, nor set its own standards for the employer, unless there is evidence of discrimination. Ezold, 983 F.2d at 527. "An employment decision that would create a problem under prong one will likely turn on whether the stated reason for [adverse employment action] is so implausible that a fact-finder could not believe it to [be] worthy of credence." Orenge v. Veneman, No. 04-297, 2006 WL 2711651, at *15 (W.D. Pa. Sept. 20, 2006); see Menta v. Cmty. Coll. of Beaver Cnty., 428 F. Supp. 2d 365, 374 (W.D. Pa. 2006). An example of a stated reason that a fact-finder could find implausible and beyond belief was set forth in Brewer v. Quaker

State Oil Refining Corp., 72 F.3d 326 (3d Cir. 1995). The employer stated the reason for terminating the employee was because his sales performance was deficient, but the evidence on the record demonstrated that the terminated employee was the leading salesperson in the region. Id. at 330-32.

Plaintiff argues the appointment of Gartner to senior director of global security was pretext for CMU's failure to promote plaintiff to the Qatar position. Plaintiff asserts there was no formal position description advertised, and Gartner lacked the background to perform the job functions. Gartner, however, was in charge of hiring for the risk management specialist position, and would have supervised the individual appointed to the position. While the risk management position focused on environmental health and safety, the director of global security position focused on security and crisis preparedness on a *global* level.

Here, plaintiff did not provide any evidence to paint CMU's actions as weak, implausible, contradictory, or incoherent. Plaintiff fails to adduce any facts to discredit CMU's decision to withdraw the risk management specialist position and use resources in Pittsburgh to fulfill the functions of that job. Plaintiff's single contention is that CMU promoted Gartner to the position for which plaintiff applied. Plaintiff's argument that Gartner currently holds the risk management specialist position is unavailing.[3] It is not disputed that Gartner was responsible for hiring and supervising any potential risk management specialist; Gartner had twenty years of experience at CMU and was the head of risk management at the time plaintiff applied for the position (Defs.' Supplemental App. (ECF No. 43), Tab 8 (Gartner Dep.) at 5-6); and the senior

---

[3] Gartner's currently working in Qatar does not alter the court's analysis with respect to his position. When CMU appointed Gartner to senior director of global security in October 2004, the position was based in Pittsburgh, Pennsylvania. In August 2006, Gartner relocated to Qatar and maintained the same position. (Defs.' Supplemental App. (ECF No. 43), Tab 8 (Gartner Dep.) at 23.) The two-year timeframe is too remote for a reasonable jury to find the position plaintiff sought and the position filled by Gartner are similar. In any event, the substantial differences between Gartner's job duties and those related to the risk management specialist position negate any inference of similarity.

director of global security position in October 2004 was based in Pittsburgh, not Qatar, and involved substantially different job duties compared to the risk management specialist position. In light of those undisputed facts, no reasonable fact-finder could conclude that the defendant's legitimate nondiscriminatory reason was pretextual under the first prong of the Fuentes test.

2. Prong two

The court is next required to examine the second prong of the Fuentes framework to determine whether plaintiff presented sufficient evidence of pretext. A plaintiff may survive summary judgment by coming forward with "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision . . . ." Fuentes, 32 F.3d at 765. The kinds of evidence relied upon by courts in the Third Circuit under this prong of the Fuentes analysis are: 1) whether the employer previously discriminated against the plaintiff; 2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class; and 3) whether the employer has treated more favorably similarly situated persons not within the protected class. Id.; see Simpson, 142 F.3d at 644-45.

i. Whether CMU previously discriminated against plaintiff

Plaintiff adduced no evidence of previous discrimination. In the memorandum opinion, the court discussed plaintiff's allegations of facially neutral discriminatory conduct and concluded those incidents did not implicate race. (See Mem. Op. at 37.) To satisfy his burden under prong two, plaintiff must aver evidence of discrimination based on his race. Rohm, 90 F. App'x at 629 (The record lacked any evidence, "either regarding the selection process itself or in connection with the promotion" of the plaintiff, "that would tend to show that [the plaintiff] was overlooked because of his race." Instead, the plaintiff's evidence failed to show pretext because

12

it was "race-neutral" and did not "give rise to an inference of racially discriminatory animus."); see Williams-McCoy v. Starz Encore Grp., No. 02-5125, 2004 WL 356198, at *8 (E.D. Pa. Feb. 5, 2004) (no evidence of unlawful racial discrimination where "not one single race-based comment is alleged and there is no logical inference that the comments were, in fact, race-based"). Plaintiff failed to adduce evidence that he was previously discriminated against based on his race and cannot satisfy this element of prong two.

    ii.    Whether CMU discriminated against other persons within plaintiff's protected class or within another protected class

Plaintiff did not offer any evidence that CMU discriminated against other persons within plaintiff's protected class or within another protected class. Plaintiff, therefore, does not satisfy this element of prong two.

    iii.    Whether CMU treated more favorably similarly situated persons not within plaintiffs protected class

Plaintiff did not adduce any evidence that CMU treated more favorably similarly situated persons not within his protected class.[4] Under these circumstances, the court concludes that no reasonable fact-finder could conclude that the defendant's legitimate nondiscriminatory reason was pretextual under the second prong of the Fuentes test.

## III. *Retaliation claim implicating a failure to promote*

Because plaintiff's § 1981 and PHRA retaliation claims implicating a failure to promote are analyzed under the same McDonnell Douglas framework the court discussed above, those retaliation claims fail for substantially the same reasons as plaintiff's race-based discrimination claims. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). For the reasons set forth above, plaintiff failed to demonstrate the position in issue remained open, which is a

---

[4] Plaintiff did not allege Gartner is similarly situated to himself. Indeed, Gartner held a senior position at CMU with nearly twenty years of experience, part of which was related to his responsibility for risk management.

necessary element of a prima facie case for retaliation.  See id. at 500.  Under those circumstances, judgment must be granted in favor of CMU with respect to plaintiff's retaliation claim based upon a failure to promote.  Plaintiff's motion for reconsideration will be denied with respect to his § 1981 and PHRA retaliation claims implicating a failure to promote.

*Conclusion*

Viewing all the facts in a light most favorable to plaintiff and construing all reasonable inferences in his favor, a reasonable jury could not conclude CMU failed to promote plaintiff to the Qatar position based on his race.  Plaintiff's motion for reconsideration will be denied with respect to his § 1981 and PHRA race-based discrimination and retaliation claims implicating a failure to promote.  An appropriate order will follow.

**ORDER**

**AND NOW**, this 8th day of December, 2010, upon consideration of plaintiff Ademola Ilori's motion for reconsideration (ECF No. 47), defendant's CMU and Leonard Brush's response thereto (ECF No. 48), and plaintiff's reply (ECF No. 50), the motion for reconsideration is **DENIED**.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
U.S. District Court Judge